Sumler v. Univ. of CO Hospital Authority Is there any evidence with regard to Dr. Brooks that he knew what the job requirements were for either this sonographer job or the prior sonographer job? He may have known on a general basis because he's in the medical profession and he knows what sonographers do. But Dr. Roth had the opportunity when he spoke with Dr. Brooks to provide him with a copy of the specific job description and he did not do so. So the answer is we don't have any evidence in the summary judgment record about whether or not Dr. Brooks knew what the requirements for this or prior work as a sonographer were, right? Correct. But he did say that he knew in general what a sonographer position did and because he felt she had already proven that she could responsibly utilize her meds in her prior job. And that leads into the next piece of fact that the district court overlooked or held in favor of the employer, which is that Ms. Sumler herself said, I worked as a sonographer. I've read the job description for UCHA. There's no difference here. I can do this job. She also provided evidence specifically showing what physically she could do. Lifting the bag of horse chow, feeding the dogs. This is an active woman. She's not somebody who's disabled. And in fact, that's the motivating part for the ADA was that back in the 50s and the 60s and the 70s, all the way up to its passage, employers had the unfettered discretion to basically say, we're afraid of you. We're going to make a decision based upon a workers' comp risk assessment. And the ADA specifically had put in place a series of categories, a way to prove a direct threat defense. So employers haven't been prohibited from making decisions that deal with medical issues and that deal with safety in the workplace, but they have to meet certain criteria. And in this case, the district court didn't even get to it because it held that Ms. Sumler hadn't shown that there was pretext on the part of the UCHA. And as set forth in my brief, no courts have held that the McDonnell-Douglas paradigm applies to a medical exam case where the employer says, your condition frightens us and we're not going to let you work here. In fact, I scoured the 10th Circuit's opinions on both the medical exam cases, Doe v. Cheyenne Mountain, all the direct threat cases, Jarvis v. Potter, Jones v. UPS. Nowhere does the court say, you have to prove a specific animus. And at summary judgment, I pointed out to the district court that Taylor v. Pathmark, which is one of the seminal cases, decided 1999, 3rd Circuit, that animus is not required. If you were sitting up here making the decision, would you look at it and say, well, there are two distinct claims, the medical inquiry claim and the ADA discrimination claim, but as a practical matter, both ultimately and logically devolve into the very same practical inquiry. And that is, is the taking of oxycodone within a particular period of time before someone goes and takes an ultrasound, the work of a sonographer, is that job related and would that reasonably affect their ability to perform that job? And we do have cases that say that you, to determine whether or not something is job related and could affect somebody's performance in the job, that you defer to the employer's perception. And that both of those claims are going to ultimately depend on whether or not there's a genuine issue of material fact that we should overcome the employer's perception, UCHA's perception that taking oxycodone could affect job performance as an ultrasound technician. There are issues of fact, Your Honor, and in this case, the record is replete with evidence that Dr. Roth's opinion may not be believed by a jury. That basically there are conflicts. He holds two different roles in which they seem to be at odds. Well, let's say, let's say Dr. Roth is an idiot. But in the question whether UCHA knew that he was an idiot, you know, so we're not, this isn't a... Well, Your Honor, no. Respectfully, no. The case law all throughout the country says that employers are responsible for the acts of their agents. They're also responsible for their doctor's decisions. And in this case, I had extra evidence from the employer's perspective that a jury could find that their claim that they were unwitting dupes of Dr. Roth's lack of skills, experience, or good faith. And that was that Deborah Jones, who was responsible for occupational health, knew that he had asked for FCA's in connection with workers' comp claims. And FCA's are one of the ways that they determine what is someone's physical capabilities. So she knew that he'd done them in workers' comp claims. She also knew that he'd never done any in a pre-employment setting. And that would affect the lifting restriction, but it wouldn't affect the cognitive restriction, would it, or would it? Well, no, Your Honor, but here's why plaintiff's claims should be heard by a jury. When she saw that Dr. Roth was playing a game, and I believe that a jury could find that he was playing a game, by just coming up with a 20-pound lifting restriction without doing FCA. And she knew that he had done that, and she didn't pick up the phone and say, hey, I've got serious concerns about here, and we don't even prohibit the use of fentanyl. If we prohibited the use of fentanyl by our employees, maybe I would buy that too. But they knew that there wasn't any prohibition. He put that in his report. We don't prohibit painkillers. Millions of Americans take painkillers. And in fact, the question is whether it was being addressed by a treating physician and whether she had responsibly used it. And Dr. Brooks told Dr. Roth she's responsibly used it. She's a trained physician from Russia. She understands the ability of fentanyl or oxycodone to cause problems. I see I'm running into my last few minutes, and I'd like to reserve the rest for rebuttal if there aren't any current questions. You bet. Thank you. Good morning, Your Honors. May it please the Court, I'm Ray Deany, law firm of Sherman & Howard, and with me at council table is my partner, William A. Wright. And thank you for indulging me earlier. Your Honors, this case falls into, frankly, one of those situations where the Court should be commending the district judge for this order on summary judgment. Because Judge Raymond Moore met every expectation under this Court's directive in Hawkins v. Schwann's home service, where at that time Judge Moore, in that case a different district judge, meticulously and faithfully followed the roadmap dictated by the Tenth Circuit precedent. That's exactly what Judge Moore did. This decision is completely unassailable. The counsel for the appellant picked the wrong theory for his case. He picked a direct evidence theory, and Judge Moore rejected that theory as applicable to this case. And I think the Tenth Circuit law on direct evidence is pretty clear. It's in the Davidson v. AOL decision, where in that case the situation was in applying for a job as a non-vocal customer service position. The hiring manager said, well, you're deaf. You can't do this job. And that's direct evidence. But even in the Davidson case, the Tenth Circuit said, but you still have to meet one of the elements of discrimination, and it's that you have to show that you're qualified to do the job. And that's where this case falters. This is a regarded as discrimination claim, and regarded as has its genesis in trying to prohibit the kind of declaration of you're disabled. You take drugs. You can't possibly do this, Judge. Rather than in our situation, let's say that the hiring manager, when he first saw the inquiry, pre-employment offer, and saw the inquiry, and it said, I take fentanyl, I take oxycodone, I take Zimbalta, I take all these things, and says she has fibromyalgia, which turned out to not be the case. It was a much more serious spinal condition, which does definitely impact lifting and positioning essential functions of these jobs. So if at that point the hiring manager had said, wow, fear, bias, stereotypes, fentanyl, we've just heard about it, is a very addictive drug. Oxycodone is a very addictive drug. If that hiring manager had said, oh, you can't possibly work here, we have a different case than we have before us here. I'm not 100% sure that I'm precisely following you, because I thought you were acknowledging that if the job restriction adversely affected her ability to perform the job, then you're entitled to not hire the person. But if it didn't affect her ability to perform the job, then the regarded as claim would be airtight. So that's a predicate for my question. It's a long predicate. Why isn't it a fact issue? When you have contrary accounts from Dr. Roth and Dr. Brooks about whether taking oxycodone within a particular period of time before working as a sonographer would affect her ability to do the job, why isn't that a fact issue? It's not a disputed fact issue. As Judge Moore said, Dr. Brooks actually agreed with Dr. Roth. In fact, it's in the notice to the patient. It's a mental acuity issue. He has a form, and I can see that he would be impeachable with his own consent form. But you can't grant summary judgment based on credibility evidence. Counsel just got through arguing that we should have done a functional capacity exam. The law is clear in the Tenth Circuit that you don't do functional capacity exams when there's no dispute between the physicians. And Dr. Brooks says in that warning that, unfortunately, counsel calls a CYA warning. Well, pardon the crassness of that, but there's a reason that warning is given. In safety-sensitive jobs, you shouldn't be going to work and performing those functions when you are dizzy and can't concentrate and the rest. This is a very precise, it's not waving a wand over people, it's a very precise function that goes not only to the accuracy of the data that's being retrieved, but the data that's passed on to the physician for treatment. Can I just follow up and then I won't play around any more than I am? Let's say, hypothetically, that you have summary judgment evidence that Dr. Brooks says that Ms. Sommer can work as a sonographer for UCHA or the previous job, that he's a doctor and he knows what sonographers do, and she can do it. And that he says, you know, I have a consent form, I've been sued before, and my lawyer told me to do that consent form, and I think it's a bunch of hooey, but I do it. This is a hypothetical. And then Dr. Roth says, oh, no, she cannot perform this job, perform as a sonographer for UCHA because she would need to take oxycodone within eight hours or whatever it is before working as a sonographer. In that hypothetical, would there be a genuine issue of material fact about whether or not she could perform the job of taking oxycodone? Absolutely not. I think, Your Honor, that's the whole structure of the ADA and the EEOC's regulations, that it is designed in that medical examination or inquiry to rebuff those sorts of prejudices. He doesn't have to be right about it, the doctor. He only needs to point out why she's not qualified for this position, which is what her obligation was to do to show that she was qualified, and to do it safely, to do it safely. And that's all Dr. Roth was pointing out. I cannot put this person, I don't recommend we put this person to work when she's taking these substances, when she has the spinal condition that she does, and she's taking the epidurals on a fairly routine basis. And let me just pause on one other problem here. Keep in mind that the record is clear that Dr. Brooks said, well, I told her you can do whatever you feel comfortable doing. That's not adequate. She says that she worked at ASAP, a clinic, and she's done this sonography before. So therefore, trust me, I can do this. She testified she never reported to ASAP that she was using fentanyl, oxycodone, or any other pain medications, epidurals and the like. And this is reminiscent of the Supreme Court's decision in Etchisable, which I think is exactly on point, and that is Mr. Etchisable worked at the Chevron Refinery for 25 years as a contract employee. He applied with Chevron to go to work full time. And Chevron did their tests under the regulations about his kidney condition in that case and said working around toxins in this refinery creates harm to self or others. Now, he says, well, I've been doing it for 26 years. And Judge Souter, who wrote the opinion, a unanimous opinion, said so far you've been lucky. We cannot be in a position, in accordance with Etchisable, to be opening ourselves up to this liability and the rest that this person was working, and we knew they were working with these conditions that compromise their mental acuity. If we had an incident, it's conceded that there are lifting requirements. We had an incident where a patient couldn't be positioned properly because of her situation. We are at risk again. And those aren't the risks or fears that we're talking about. Those, in Etchisable, the Supreme Court said of course the employer should be concerned with those things, and that's not discriminatory. It is a well-developed medical opinion, a reasonable opinion, based on input from the patient, Ms. Sumler in this case, based on the input from her physician that I don't believe, absent these limitations, that she can do this job safely. Let me just address where this case went awry. By going down the road of direct threat, as Judge Moore pointed out, the real standard is McDonnell-Douglas, and it's a burden shifting. Why? Because of what you said earlier. Everybody knows, I mean, your whole argument is that she was not given the job because of her perception that she needed oxycodone or the strong medication, and that was going to prevent her from performing the job, and that she was unable to comply with the lifting restriction. So it's not like you have a question, well, did they not hire her because of that? Well, your whole argument is they didn't hire her because of that. Your Honor, I think the point to recognize here is that direct threat or not, remember what I said about AOL Davidson, direct threat or not, even in a direct threat case, she still bears the burden of showing that she's qualified. According to Judge Moore, she didn't do so. The only point is the ability to perform the job, that's not part of the McDonnell-Douglas inquiry, is it, or is it? Qualified, sure, absolutely. It's an element of a McDonnell-Douglas standard. The primathasia is showing, not pretext. And ultimate burden of persuasion, and you hit on exactly the problem that Judge Moore has with the case. There's not a shred of evidence in the case that there is pretext. They put on no evidence because they went with this direct threat theory, direct evidence, excuse me, not direct threat, that's a different term in the ADA vernacular. They went with this direct evidence theory and never put any factual information as to implausibility, a lie, you can't believe Dr. Roth. This is where I'm not following you. And I don't mean that critically, I just mean maybe not understanding. So at the primathasia stage, you argue that she did not meet the qualifications for the job because she could not meet the cognitive requirement and the lifting requirement. Your opposing counsel says... Safely, Your Honor. Yes, safely. And your opposing counsel says the opposite of that. And so you never get to the burden shifting, the second or third stages of McDonnell-Douglas, if the plaintiff doesn't satisfy the primathasia showing. And so... We agree with that. And so I don't know why pretext would come into play. These are either qualifications, proper qualifications to conduct the job safely or they're not. If they are, then we know that UCHA did not hire her because of that. Can I come back to that? They didn't hire her because she wasn't qualified. She didn't show that she was qualified if she had to have all of these conditions in place. Both in the Adair case in the Tenth Circuit as well as Mason v. Sabaya said, for her statement, self-serving statement, that I can do this job, that is not enough to show qualified. That doesn't even get you past the primathasia case, let alone the ultimate burden of persuasion in this regard. What she would have had to have shown is that Dr. Roth was lying, was making this up. His explanation is implausible. Can't do it. And that's what Judge Moore said. There's not a shred of evidence that any of that is true. He made an informed decision, and the ADA coordinator, Mr. Esser, looked at that, looked at the job description, talked with the managers about what about this, the job functions, and concluded she is not qualified. And she can't get over that by saying, well, I've done it before. I'm done. Almost done. Well, you've gone 55 seconds over. Oh, I'm sorry. You're right. I'm reading backwards. Thank you, Your Honor. Thank you very much. We'll give the appellant an extra minute. Thank you, Your Honor. Both the defendant and the district court don't understand how the direct evidence aspect comes into place. Judge Moore's decision that there was no direct evidence, when you read the opinion, he implies that you need animus. But Judge Sutton from the Sixth Circuit Court of Appeals in EEOC versus Dolgen Corp, 899F3-428 at 436 in 2018, said no animus is required. When an employer says we're taking away a job or we're refusing to hire due to a particular medical condition, that's all that's needed. And part of the other confusion is that the defendant seems to think that somehow we have to prove falseness. That's what the McDonnell-Douglas paradigm was designed to do, circumstantial evidence where the employer is saying providing a justifiable reason to do what it did, a non-discriminatory reason. In fact, that's why I focused on Judge Costa's decision in the Nall versus BNSF case. Because in this case, direct threat is a defense. So when the employer says you can't do this job from a physical standpoint because we're worried about you hurting yourself or others, they've admitted discrimination. Then the question is whether they have a defense, which is the direct threat defense. And that's why we never got to that at the district court level, because Judge Moore said, well, since you haven't proven that it's a direct evidence, you haven't proven that it's false, we don't even get to pretext. What if your client is not qualified? Let's assume she's not qualified. I mean, would you still win? No, Your Honor, we don't. Okay, so you do concede that you have to prove that she's qualified. That's part of the prima facie case, Your Honor. Right, and so, I mean, as far as a regarded as case goes, I mean, do you have a case that says McDonnell Douglas does not apply? You know what, Your Honor, it's very much like the XB Stolle case that this court just heard on Bank. For years, the Tenth Circuit has been dealing with reasonable accommodation cases, and nobody ever said in any of those opinions, you have to show an adverse employment action. And Judge Holmes, which was the minority of the dissent at the first panel decision, said, we weren't saying anything because we didn't need to. And, in fact, that's the same logic that goes with these direct threat cases. But your theory is novel. You do agree with that. Is that what? That your theory is novel, that the McDonnell Douglas framework doesn't apply. No, it's not novel at all, Your Honor, in a regarded as case. I mean, I just did a quick search here, dangerous Westlaw search on the bench, and all the cases I'm seeing on a regarded as claim are replying McDonnell Douglas. Well, on those cases, Your Honor, when the employer has not specifically stated, we're rejecting you because of this medical condition. But in the Iqazabal case, the reason they got to the direct threat is because the employer said, we're taking you out of the workplace because you're a danger. Right. Well, what I just heard, though, was our doctor said that you had to lift 50 pounds, you had to have this concentration, and she couldn't prove that she could lift 50 pounds and have the concentration. I mean, Your Honor, there are a number of cases that belie that. Give me your best one. McMillan v. City of New York, where there's behavior that's directly associated with the disability, and you fire the person for the behavior, you fired them on the basis of the disability. There is a Tenth Circuit case, and I want to say that it's Den Hartog, where they say you can't separate them. Basically, they have said it's her medical condition that we don't think she can do this job. They said you can't lift 50 pounds. How is that not related to their perception of her physical medical condition? It is a priori. They can't be separated. When they say your medications you take, because of your medical condition, we think would make you a danger to yourself or the patients, they've said. This is based upon your disability. Otherwise, we'd have to prove somehow that this was all a sham. The only thing that was a sham was Dr. Roth's opinions and the basis for them, but not whether they were actually relayed to the employer and the employer relied upon them. I thank you very much. Thank you. This matter will be submitted. Thank you, counsel, for both sides for your excellent written and oral advocacy. We'll take this case under submission and we'll go to the last case on today.